**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

MATTHEW PAUL SAUNDERS,

     Plaintiff,

                                **Case No. 2:20-cv-794**

    vs.                       **Chief Judge Algenon L. Marbley**

                                **Magistrate Judge Elizabeth P. Deavers**

COMMISSIONER OF
SOCIAL SECURITY,

     Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Matthew Paul Saunders, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 18), the Commissioner's Memorandum in Opposition (ECF No. 19), Plaintiffs' Reply (ECF No. 22), and the administrative record (ECF No. 11). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I.    BACKGROUND

On February 26, 2017, Plaintiff filed his applications for disability insurance benefits and supplemental security income, alleging that he had been disabled since December 15, 2016. (R. at 253.) Plaintiff's applications were denied initially and upon reconsideration. (*Id.*) Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). (*Id.*) ALJ David Read

held a hearing on October 22, 2018, at which Plaintiff, represented by counsel, appeared and testified. (R. at 271-296.)  On February 6, 2019, ALJ Read issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 250-270.)  On December 13, 2019, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1-7.)  Plaintiff then timely commenced the instant action.

## II.  RELEVANT HEARING TESTIMONY

When asked about his most recent employment, Plaintiff testified that he was fired because he heard voices.  (R. at 279.)  He described these voices as "commanding" and "real." (*Id*.)  In response to his counsel's questions, Plaintiff explained that the voices were very distracting.  (R. at 281-282.)  Plaintiff explained that he has difficulty reading or watching TV because he gets" scared to death" and can't really watch because it "feels like [his] family [are] the people on TV."  (R. at 282.)  He attends counseling every other week.  (*Id*.)  He further testified that he has trouble with his memory and "cannot remember anything." (*Id*.)  He writes everything down or he'll forget it.  (R. at 283.)

Plaintiff testified that his family helps him a lot with things like going to the store, or getting his "legal stuff done." (R. at 283.)   He has trouble interacting with people in public situations.  (*Id*.)  For example, if he doesn't know the people and it's a big crowd he gets scared and has to leave. (*Id*.)  He has walked off jobs when hearing voices saying they are going to beat him up.  (*Id*.)  Once he walked off a job when voices kept telling him to go to the church on the hill and pray with God. (*Id*.)  He walked three and a half miles off the job to the church and nobody would answer the door so he sat on his knees and prayed to God that it would stop. (*Id*.) When he returned, he got fired from that job. (*Id*.)

Plaintiff stated that he cannot concentrate.  (R. at 284.)  For example, he will be talking about something, his mind will go completely blank, and he cannot remember what he was talking about.  (*Id.*)  He has trouble with his emotions.  (*Id.*)  He gets angry and cries a lot.  (*Id.*)

When Plaintiff worked for Trimat, he loved who he was and how everything was going.  (R. at 284.)  He loved the work.  (*Id.*)  Now, however, he feels like he is "less than a man," because he cannot get out there and work in public. (*Id.*)  He can do side jobs like painting or landscaping with his dad, but he cannot do these jobs with a stranger.  (*Id.*)   Even with his dad, he can work for "maybe two hours." (*Id.*)  He does the small jobs and his dad does the bigger jobs because he cannot concentrate.  (R. at 284-285.)  He experiences OCD like symptoms when performing household chores.  (R. at 285.)

Plaintiff also testified that he experiences back pain at the L3 and L4 level. (R. at 286.) The pain stays in his back and is sharp, stabbing, dull aching, burning, and throbbing. (*Id.*)  It gets worse if he does something too long. (*Id.*)  Things that make the pain worse include riding his bike or walking to the store a mile away.  (*Id.*)   He does not have a vehicle, so walking and riding his bike are his modes of transportation.  (*Id.*)   At night when he goes to bed, the pain is extremely bad.  (*Id.*)  He cannot bring himself to stand up.  (*Id.*) He is hunched over and needs a cane. (*Id.*)   He has his dad or other family members get everything for him, including groceries. (R. at 286-287.)

In response to questions from the ALJ regarding his substance abuse issues, Plaintiff testified that he was in remission and had not used for over two years. (R. at 288.)   He explained that he participates in a health recovery system through which he is prescribed Suboxone. (*Id.*) He stated that he takes the Suboxone and would be done with the program in about six months. (*Id.*)  Plaintiff testified that he continues to hear voices just as much when he is sober.  (*Id.*)

[Plaintiff stated that his medications have been increased to treat his condition. (R. at 288-289.) According to Plaintiff, however, the voices remain, they are just not as loud. (R. at 289.)

### III.    RELEVANT MEDICAL RECORDS

#### A.  Ryan Wagner, Ph.D.

Plaintiff was seen for a psychological consultation with Dr. Wagner on November 15, 2016, at the request of the Ohio Department of Disability Determination. (R. at 528-534.)  Dr Wagner offered the following diagnoses of Plaintiff's conditions:  Schizoaffective Disorder, Bipolar Type; Unspecified Trauma and Stressor Related Disorder; and Opioid Use Disorder, Mild, in partial remission.  (R. at 532.)  Dr. Wagner found Plaintiff to be an unreliable historian because Plaintiff had a difficult time staying on task and had difficulty providing details about his drug use history. (R. at 533.)   Dr. Wagner summarized his impressions of Plaintiff as follows:

> Clinically, {Plaintiff] was a cooperative individual with whom rapport was adequately established. He appeared to misunderstand the purpose of the evaluation and believed that the interview was a therapy session. He displayed indications of depression and anxiety throughout the evaluation. After the evaluation ended, he continued to knock on the door of the examination room to ask the examiner and the testing assistant additional questions. [Plaintiff's]' short-term memory, attention and concentration, remote recall and abstract reasoning abilities were all poor, but his fund of information was intact. As indicated earlier, he appears to be of below-average intelligence.

(R. at 532.)

Dr. Wagner provided the following functional assessment in light of his diagnoses.  In considering Plaintiff's abilities and limitations in understanding, remembering and carrying out instructions, Dr. Wagner found that Plaintiff: (1) performed in the below average range based on his performance on a brief abstract reasoning activity which suggests difficulty understanding instructions; (2) performed in the below average range based on his performance on a brief short

term memory activity which suggests difficulty remembering instructions; (3) had difficulty

staying on task throughout the evaluation providing tangential and unrelated responses; (4)

reported problems with learning in school which may lead to difficulties acquiring new

information in work settings; and (4) reported problems learning work related tasks including

difficulty following directions and acquiring new information. (R. at 533.)

   With respect to Plaintiff's abilities and limitations in maintaining attention and

concentration, and in maintaining persistence and pace, to perform simple tasks

and to perform multi-step tasks, Dr. Wagner noted that Plaintiff: (1) had difficulty completing

both serial 7s and serial 3s tasks which suggests difficulty maintaining attention and focus; (2)

displayed adequate task persistence when answering questions; (3) displayed indications of

distraction during the evaluation including requests to repeat questions; (4) described a history

of problems with attention and concentration in school including impulsive behavior and

difficulty with focus and (5) described a history of problems with attention and concentration

within work environments based on his statements which may affect his ability to

complete tasks in a timely and effective manner. (R. at 533.)

   As for Plaintiff's abilities and limitations in responding appropriately to supervision and

to coworkers in a work setting, Dr. Wagner stated that Plaintiff: (1) interacted in a somewhat

disturbing manner during the evaluation which may affect level of engagement with co-workers

and supervisors; (2) has some friends and family with whom positive relationships were

described; (3) described a history of problems with supervisors and co-workers that had led to

him getting fired, which may lead to conflicts in future work settings when presented with work

related stressors; (4) functions in the below average range of intellectual functioning which

suggests difficulty understanding and responding to supervisor requests; and (5) described

potential impacts of mental health problems on work performance which may lead to emotional instability when presented with critical supervisory feedback and difficulty developing and maintaining appropriate coworker relationships.  (R. at 533-534.)

Finally, in assessing Plaintiff's abilities and limitations in responding appropriately to work pressures in a work setting, Dr. Wagner noted that Plaintiff:  (1) displayed depressed and anxious affect when discussing past and current pressures; (2)  described depressive symptoms that may compromise his ability to respond to work pressures and lead to increased emotional instability and withdrawal; (3) described anxious symptoms that may compromise his ability to respond to work pressures and lead to increased likelihood of agitation and experiences of anxiety attacks; (4) presented with below average cognitive ability to adapt to work pressures which may lead to difficulty managing work expectations and pace; and (5) endorsed a history of emotional deterioration in work settings which led to him getting fired due to "freaking out."  (R. at 534.)  Dr. Wagner opined that, unless Plaintiff receives appropriate interventions, his prognosis is questionable.  (R. at 532.)

### B.  Joseph Edwards, Ph.D.

Dr. Edwards reviewed Plaintiff's file at the initial level on March 16, 2017. (R. at 297-308.)  He determined that Plaintiff had the following medically determinable impairments: Depressive, Bipolar and Related Disorders; Substance Addiction Disorders (Drugs); and Personality Disorders.  (R. at 301, 313.)  However, he found that Plaintiff's impairments did not meet or equal Listing Nos. 12.04 or 12.15. (*Id*.)   With respect to the "B" criteria, he found Plaintiff to be moderately limited in his ability to:  understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. (*Id*.) Dr. Edwards found that Plaintiff did not meet the "C" criteria of the relevant Listings.  (R. at 302.

314.)  He found Plaintiff 's statements regarding his symptoms to be partially consistent with the

medical and non-medical evidence in the file.  (R. at 303, 315.) He provided the following

assessment of Plaintiff's consistency.

> [H]e reports mental issues. He has been diagnosed with an affective disorder,
> personality disorder, and has a long history of substance abuse, and substance
> induced psychosis. Records indicate "doctor shopping." [A]t CE, downplayed
> substance abuse hx. [R]ecords show that when he is not using substances (during
> IPs), no hallucinations or delusions reported. At CE, he reported hallucinations.
> [F]indings only partially consistent with allegations.

(*Id.*)

Dr. Edwards found that Plaintiff had understanding and memory limitations but that he

was not significantly limited in his abilities to remember locations and work-like procedures or

to understand and remember very short and simple instructions.  (R. at 303, 315.)  However, he

found that Plaintiff was moderately limited in his ability to understand and remember detailed

instructions but also found that Plaintiff could understand and remember 1-3 step instructions.

(R. at 303-304; 315-316.).  Dr. Edwards further noted that Plaintiff had sustained concentration

and persistence limitations but that he was not significantly limited in his ability to: carry out

very short and simple instructions; perform activities within a schedule, maintain regular

attendance, and be punctual within customary tolerances; sustain an ordinary routine without

special supervision; work in coordination with or in proximity to others without being distracted

by them; and make simple work-related decisions.  (R. at 304, 316.)  At the same time, Dr.

Edwards found Plaintiff to be moderately limited in his ability to carry out detailed instructions;

to maintain attention and concentration for extended periods; and to  complete a normal workday

and workweek without interruptions from psychologically based symptoms and to perform at a

consistent pace without an unreasonable number and length of rest periods.  (*Id.*)  Dr. Edwards

explained that, "[d]ue to his psychological impairments, [Plaintiff] can carry out 1-3 step tasks

without extended periods of uninterrupted concentration." (*Id*.)  Dr. Edwards also noted that Plaintiff has social interaction limitations but concluded that Plaintiff was not significantly limited in this ability to ask simple questions or request assistance;  to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; or to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.  (R. at 304-305; 316-317.)  However, Dr. Edwards concluded that Plaintiff was moderately limited in his ability to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors.  (R. at 304, 316.)  In short, Dr. Edwards concluded that Plaintiff could maintain brief conventional relations with others.  (R. at 305, 317.)  Dr. Edwards further found that, although Plaintiff had adaptation limitations, he was not significantly limited in his abilities to: be aware of normal hazards and take appropriate precautions; to travel in unfamiliar places or use public transportation; to set realistic goals or make plans independently of others.  (*Id*.)  Dr. Edwards also found that Plaintiff was moderately limited in his ability to respond appropriately to changes in the work setting.  (*Id*.)  Accordingly, Dr. Edwards found that major changes should be explained in advance with gradual implementation. (*Id*.)

According to Dr. Edwards, Plaintiff retains the ability to do work that is 1-2 steps in a static work environment. (R. at 305, 317.)  He can relate superficially to coworkers, supervisors, and the general public. (*Id*.)  He can adapt to routine changes that are explained.  (*Id*.)

Dr. Edwards discounted Dr. Wagner's more restrictive opinion, noting that it "relies heavily on the subjective report of symptoms and limitations provided by the individual, and the totality of the evidence does not support the opinion. The opinion is without substantial support from other evidence of record, which renders it less persuasive."  (R. at  306, 318.)  Finally, Dr. Edwards

opined that Plaintiff should be limited to unskilled work with no other exertional limitations.  (R. at 307, 319.)

### C. Deryck Richardson, Ph.D.

Dr. Richardson reviewed Plaintiff's file at the reconsideration level on May 23, 2017.  (R. at 323 – 335; 336-348.)  His diagnoses included depressive, bipolar and related disorders, substance addiction disorders, and personality disorders.  (R. at 328, 341.)  He determined that Plaintiff did not meet the requirements for Listing Nos. 12.04 or 12.08. (*Id.*)  With respect to the "B" criteria, he determined that Plaintiff had "mild" limitations in his ability to understand, remember, or apply information; interact with others; and concentrate, persist, or maintain pace. (*Id.*) He found Plaintiff to have "moderate" limitations in his ability to adapt or manage himself. (*Id.*)  He found Plaintiff 's statements regarding his symptoms to be partially consistent with the medical and non-medical evidence in the file.  (R. at 329, 342.)  He provided the following assessment of Plaintiff's consistency.

> [H]e reports mental issues. He has been diagnosed with an affective disorder, personality disorder, and has a long history of substance abuse, and substance induced psychosis. Records indicate "doctor shopping." [A]t CE, downplayed substance abuse hx. [R]ecords show that when he is not using substances (during IPs), no hallucinations or delusions reported. At CE, he reported hallucinations. [F]indings only partially consistent with allegations.

(*Id.*)

While Dr. Richardson found that Plaintiff had understanding and memory limitations, he found these limitations to be "not" significant.  (R. at 330, 343.)  He explained that Plaintiff could understand and remember detailed instructions when sober.  (*Id.*)  He also found that Plaintiff has sustained concentration and persistence limitations.  However, aside from finding Plaintiff moderately limited in his ability to carry out detailed instructions, he found Plaintiff otherwise to be "not significantly limited."  (R. at 330, 343.)  He further found that Plaintiff was not significantly limited in his ability to make simple work-related decisions.  (R. at 331, 344.)

He found Plaintiff to be moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (*Id.*)  As he explained,

> When sober, clmt continues to have some reduction in stress tolerance. The latter restricts him to performing 3-5 step, routine tasks that do not require a rapid pace when sober.

(R. at 331, 344.)

Additionally, while Dr. Richardson found that Plaintiff has social interaction limitations, he found Plaintiff to be "not significantly limited" in the following abilities:  to interact appropriately with the general public; to ask simple questions or request assistance;  to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (R. at 331, 344.)   He noted that, when Plaintiff was sober, his "social functioning is [within normal limits]." (*Id.*)   He further found that Plaintiff had adaptation limitations and was moderately limited in his ability to respond appropriately to changes in but was not significantly limited in his ability:  to be aware of normal hazards and take appropriate precautions;  to travel in unfamiliar places or use public transportation; to set realistic  goals or make plans independently of others. (*Id.*)   He explained that major changes would need to be explained in advance with gradual implementation due to Plaintiff's lingering stress tolerance reduction when sober. (*Id.*)

Dr. Richardson also assessed Dr. Wagner's opinion as less persuasive because it relied heavily on Plaintiff's subjective report of symptoms and limitations and was not supported by the

totality of the evidence.  (R. at 333, 346.)   Taking all of the above into account, Dr. Richardson found Plaintiff to be limited to unskilled work with no exertional limitations.  (R. at 334, 347).

## IV.    ADMINISTRATIVE DECISION

On February 6, 2019, the ALJ issued his decision.  (R. at 250-270.)  At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since his alleged onset date of December 15, 2016.   (R. at 255.)

At step two, the ALJ concluded that Plaintiff had the following severe impairments: polysubstance abuse, schizoaffective disorder, mood disorder, and degenerative changes of the lumbar spine. (R. at 255.)

At step three of the sequential process, the ALJ concluded that that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 257.)  At step four, the ALJ assessed Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). In addition, the undersigned finds the claimant must avoid working at unprotected heights. He can perform simple, low stress, routine, and repetitive tasks that are not performed at a production rate, such as assembly line type work. The claimant can make simple work-related decisions. He can occasionally interact with coworkers and supervisors. However, the claimant should not work with the public. He is able to tolerate few changes in his work setting. The claimant may be "off task" for up to five percent of an eight-hour workday due to his symptoms.

(R. at 260.)

In reaching this determination, the ALJ accorded various degrees of weight to the numerous opinions of record with supportive reasoning.  (R. at 261-263.)

Relying on the VE's testimony, the ALJ determined that Plaintiff could perform his past relevant work as a "Lawn Mower."  (R. at 263-264.)  Further, based upon the VE's testimony and the totality of the evidence, and considering the Plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy as of the alleged onset date of disability. (R. at 265.)  The VE testified that representative jobs included dishwasher, cleaner, and material handler.  (*Id*.)  Accordingly, the ALJ determined that Plaintiff was not disabled under the Social Security Act. (*Id*.)

## IV.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.   ANALYSIS

Plaintiff sets forth two assignments of error: (1) The ALJ committed substantial error by refusing to consider whether Plaintiff's personality disorder met or equaled Listing 12.08 or otherwise caused serious impairment in his ability to perform work activity; and (2) "the ALJ substituted his own medical judgement for that of the State agency experts at step two regarding

13

diagnosis and of the Consultative examination of Dr. Wagner…." (ECF No. 18 at 6.) The Undersigned considers each issue in turn below.

### A. Listing 12.08

Plaintiff contends that the ALJ "committed substantial error by refusing to consider whether or not [his] personality disorder met or equaled Listing [] 12.08 or otherwise caused serious impairment in his ability to perform work activity." (ECF No. 18 at 3.) The Undersigned disagrees and finds that substantial evidence supports the ALJ's conclusion as to the applicability of Listing 12.08.

A plaintiff's impairment must meet every element of a Listing before the Commissioner may conclude that he or she is disabled at step three of the sequential evaluation process. *See* 20 C.F.R. § 404.1520; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986). The plaintiff has the burden to prove that all of the elements are satisfied. *King v. Sec'y of Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1984). The regulations provide that in making a medical equivalence determination, the Social Security Administration will "consider the opinion given by one or more medical or psychological consultants designated by the Commissioner." 20 C.F.R. § 404.1526(c). Nevertheless, "[t]he burden of providing a . . . record . . . complete and detailed enough to enable the Secretary to make a disability determination rests with the [plaintiff]." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 363, 367 (6th Cir. 1989) (Commissioner's decision denying benefits affirmed where medical evidence "almost establishes a disability" under Listing).

The Listing of Impairments "describes impairments the SSA considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Frost v. Comm'r of Soc. Sec.,* No. 3:18-CV-70, 2019 WL

5304056, at *2 (S.D. Ohio Oct. 21, 2019), *report and recommendation adopted*, No. 3:18-CV-70, 2020 WL 33116 (S.D. Ohio Jan. 2, 2020) (quoting *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009) (citing 20 C.F.R. § 404.1525(a)) (internal quotations omitted). An ALJ is not required to 'address every listing' or to 'discuss listings that the applicant clearly does not meet.'" *Id.* (quoting *Smith–Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (citations omitted)). However, if the record evidence raises a "substantial question" regarding whether a plaintiff meets a listing, an ALJ's failure to discuss the relevant listing constitutes reversible error. *Id.* (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011)). "To meet this standard, the 'claimant must point to specific evidence that demonstrates he [or she] reasonably could meet or equal every requirement of the listing.'" *Id.* (quoting *Smith–Johnson*, 579 F. App'x at 432 (citations omitted)).

The ALJ specifically considered, and ultimately rejected, the applicability of Listing 12.08, stating as follows:

> Please note, the undersigned finds the claimant's diagnosis' of Anti-Social Personality Disorder and Post-Traumatic Stress Disorder (PTSD) were not supported by evidence of significant distrust of others, exposure to actual or threatened death, serious injury, or violence; with subsequent involuntary re-experiencing of the traumatic event (for example, intrusive memories, dreams, or flashbacks); and avoidance of external reminders of the event; and disturbance in mood and behavior; and increases in arousal and reactivity (for example, exaggerated startle response, sleep disturbance) (see listing 12.08 and 12.15). It appeared psychiatric nurses based the diagnosis largely, if not entirely upon the claimant's subjective reports and not upon behaviors they observed firsthand. Not all of the criteria required to make the diagnoses were satisfied. First, in terms of his personality, the claimant was able to trust some people such as his brother and sister. He was able to socialize appropriately when motivated. In terms of his traumatic experiences, it was not clear what traumatic event had occurred to cause the claimant's reported posttraumatic symptoms. If the source was referring to the rollover car accident from 2012, the claimant did not appear to be significant traumatized by the accident, as he was able to ride a four-wheeler later on (5F:2). Next, there was no evidence the claimant was avoiding reminders of any traumatic events or having flashbacks. There was no evidence of exaggerated startle response. For these reasons, the undersigned finds the diagnoses of personality disorder and

15

PTSD are not supported or consistent with the other evidence. Please note, application of listing 12.08 and 12.15 does not apply, meaning analysis of the 12.08B and 12.15B/C mental functional limitations is not required at this point of the decision. The undersigned has assigned no mental functional limitations attributable to personality disorder or PTSD later in this decision.

(R. at 256.)

Plaintiff's complaint here is wholly without merit.  In order to meet Listing 12.08, Plaintiff is required to demonstrate not just that he meets the "A" criteria, but that he meets the "B" criteria as well. 20 C.F.R. 404, Subpt. P, App. 1, Listing 12.08. The ALJ evaluated Plaintiff's impairments under Listings 12.03 and 12.04, both of which contain "paragraph B" criteria identical to those provided by Listing 12.08. Specifically, in order to satisfy the "B" criteria of any of these listings, Plaintiff must demonstrate:

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

1. Understand, remember, or apply information.
2. Interact with others.
3. Concentrate, persist, or maintain pace.
4. Adapt or manage oneself.

20 CFR Part 404, Subpart P, Appendix 1.

The ALJ determined that Plaintiff's impairments did not meet the "paragraph B" criteria because Plaintiff had only mild limitations in his ability to understand, remember, or apply information (R. at 259); marked limitations in his ability to interact with others (*Id*.); moderate limitations in his ability to concentrate, persist or maintain pace (*Id*.); and moderate limitations in his ability to adapt or manage oneself.   (R. at 260.)   Plaintiff offers no evidence to refute the ALJ's analysis of the "B" criteria.

Moreover, the ALJ's conclusion as to the relevant criteria is supported by substantial evidence.  For example, the ALJ noted that while Plaintiff allegedly experiences intrusive thoughts

that affect his ability to understand, remember and complete tasks at times, he also is able to remember locations/directions and how to perform chores such as operating a four-wheeler, processing deer, and training dogs.  (R. at 259 citing R. at 543.) Further, the ALJ reasonably relied on Plaintiff's demonstrated ability to understand questions, recall information, and form appropriate responses to questions during the hearing.  (*Id*. citing Hearing testimony, R. at 453-460; 528-534.) The ALJ also acknowledged in some detail Plaintiff's alleged mood swings with agitation and its impact on his ability to tolerate social contact.  (R. at 259.)   However, he countered this with a discussion of Plaintiff's ability to maintain stable relationships with his long-term girlfriend and his brother and his self-reported ability to live with friends (*Id***.** citing R. at 453-460; 528-534.) The ALJ also cited Plaintiff's lack of obvious difficulty interacting with others during the hearing and "appropriate" and "cooperative" behavior in response to questioning.   (*Id.* citing Hearing Testimony and R. at 453-460; 528-534.)

On the issue of Plaintiff's ability to concentrate, persist or maintain pace, the ALJ noted that Plaintiff's "thought process has appeared to be broken at times and he has appeared to go off on tangents." (R. at 259 citing R. at 528-534; 540-563). At the same time, the ALJ noted that Plaintiff "is able to carry out simple instructions from his therapists and counselors," and "has been able to pay attention during visits with his care providers."  (*Id.* citing R. at 772).  The ALJ further discussed Plaintiff's ability to "keep scheduled appointments, be on time, and maintain a daily routine without constant supervision" and Plaintiff's lack of obvious difficulty paying attention and responding during the hearing. (R. at 259.)

Finally, the ALJ discussed Plaintiff's difficulties "coping with stress and making decisions."  (R. at 260.)  He noted Plaintiff's reportedly poor decisions and substance abuse, his jail time and inpatient psychiatric care due to drug use, failure to meet obligations,

agitation, and hallucinations (*Id*. citing R. at 540-563).  However, against this evidence, the ALJ

reasonably relied on evidence of Plaintiff's ability to understand, remember and follow

instructions from others such as his care providers and authority figures; his release back into the

community from jail and the hospital due to mental competence; his lack of difficulty following

instructions and making decisions during the hearing; and his ability to make his own life

decisions and manage his own resources.   (R. at 260 citing Hearing Testimony, R. at 453-460;

528-534*;* 540-563).

Plaintiff does not seriously challenge the ALJ's analysis other than to suggest that the

record experts did not have access to Plaintiff's hearing testimony or later medical evidence.

This argument is neither well-developed nor of any consequence.  First, "there is no categorical

requirement that a non-treating source's opinion be based on a 'complete' or 'more detailed and

comprehensive' case record."  *Helm v. Comm'r of Soc. Sec. Admin*., 405 F. App'x 997, 1002 (6th

Cir. 2011).  Further, the ALJ clearly considered more recent evidence, and, in doing so, adopted

a more restrictive RFC finding than the one proposed by either Dr. Edwards or Dr. Richardson.

(R. at 260, 262.)  *See McGrew v. Comm'r of Soc. Sec.,* 343 F. App'x 26, 32 (6th Cir. 2009) (the

ALJ considered the post-assessment medical examinations and took into account relevant

changes).  At most, Plaintiff may be arguing that substantial evidence exists to support a finding

different than that reached by the ALJ here.  However, "if substantial evidence supports the

ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the

record that would have supported an opposite conclusion.'" *Blakley,* 581 F.3d at 406.

For all of these reasons, the ALJ's determination not to evaluate Plaintiff's limitations

under Listing 12.08 can only be considered, at most, a harmless error. *See Rabbers v. Comm'r

Soc. Sec. Admin.*, 582 F.3d 647, 654–55 (6th Cir. 2009) ("[W]e review decisions of

administrative agencies for harmless error.")  Accordingly, it is **RECOMMENDED** that Plaintiff's first contention of error be **OVERRULED**.

### B.  RFC

Plaintiff's second assignment of error is not well-articulated.  As best the Court understands it, Plaintiff generally appears to assert that the residual functional capacity incorporated into the hypothetical question asked to the vocational expert is not supported by substantial evidence.  (ECF No. 22 at 2-3.)  By extension, Plaintiff seems to argue that this defective RFC cannot provide significant evidence to support an ALJ's decision.  More specifically, Plaintiff appears to object to the ALJ's determination that his symptoms may cause him to be off-task 5% of the time during an 8-hour workday.  He seems to suggest that record evidence supports the conclusion that he would be off-task 15% of the time which, according to the VE, would be work-preclusive and support a finding of disability.  (ECF No. 22 at 2.)

 Certainly, "[t]o provide probative evidence, the VE's testimony must respond to hypothetical questions that accurately describe a claimant in all substantial and relevant aspects." *Vanwormer v. Comm'r of Soc. Sec.,* No. 19-10836, 2020 WL 7021692, at *2–3 (E.D. Mich. Nov. 30, 2020).  At the same time, Plaintiff bears the burden of establishing that his off-task calculation is more than 5%.  *Vanwormer*, 2020 WL 7021692, at *2-3 (citing *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (explaining that the claimant bears the burden of demonstrating the need for a more restrictive RFC)).  Plaintiff has not met that burden here.

First, Plaintiff simply has not shown that he would be off-task 15% of the time.  To the extent that Plaintiff contends that the ALJ's evaluation of the medical evidence fails to support the 5% off-task calculation, his argument fails for two reasons. First, this argument is very poorly developed.  "In this circuit, it is well-settled that '[i]ssues adverted to in a perfunctory manner,

19

unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . .  put flesh on its bones.'" *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 247 (6th Cir. 2007) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.1997)).  Further, to the extent an argument is discernible, it appears to be that the ALJ incorrectly calculated an off-task percentage because he erred in his evaluation of Dr. Wagner's opinion.  (*See* ECF No. 18 at 6; ECF No. 22 at 2.)

Opinions from non-treating sources are never assessed for controlling weight but are evaluated using the regulatory balancing factors set forth in 20 C.F.R. § 416.927(c). *Hobbs v. Berryhill*, No. 3:17-CV-00095-DCP, 2019 WL 1332370, at *3 (E.D. Tenn. Mar. 25, 2019) (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)).

An ALJ is entitled to give less weight to a consultative examiner's opinion. *See Earley v. Comm'r of Soc. Sec.*, No. 2:19-CV-53, 2020 WL 1080417, at *3 (S.D. Ohio Mar. 6, 2020) (citing *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 467 (2017) (noting that a one-time meeting with a psychological consultative examiner does not "create the on-going treatment relationship necessary to apply the treating source rule")). These opinions are weighed "'based on the examining relationship (or lack thereof), specialization, consistency, and supportability.'" *Hobbs*, at *3 (quoting *Gayheart,* 710 F.3d at 376)*; 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). "An ALJ is only required to provide good reasons for explaining the weight assigned to the opinion of a 'treating source.'" *Id.; see also* 20 C.F.R. § 416.927(c)(2); *Perry v. Comm'r of Soc. Sec.*, 501 F. App'x 425, 426 (6th Cir. 2012)

("An ALJ need not 'give good reasons' for the weight he assigns opinions from physicians who, like Dr. Pickering, have examined but not treated a claimant.").

Rather, opinions from one-time consultative examiners are not due any special degree of deference. *Hobbs*, 2019 WL 1332370, at *3 (citing *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)). "Greater weight is assigned to the opinion of a consultative source if that source has examined the claimant." *Earley, at *3* (citing *Staymate*, at 467). "Additionally, 'an ALJ's decision to give weight to medical opinion evidence does not require the ALJ to incorporate every restriction proposed by the medical source.'" *Id.* (quoting *Price v. Comm'r of Soc. Sec.*, No. 2:18-CV-128, 2019 WL 396415, at *2 (S.D. Ohio Jan. 31, 2019)).

The ALJ addressed Dr. Wagner's opinion as follows:

> As for the opinion evidence, a non-treating, examining, psychological consultant believed the claimant would have difficulty coping with stress and might withdraw from social interaction due to his history of agitation (Nov 2016, Wagner, Psy.D., 5F). The undersigned assigns these statements partial weight. Specifically, there is evidence the claimant has had agitation and social function issues in the record. However, as mentioned earlier, there was evidence that the claimant was intentionally misleading his care providers and others in order to be found eligible for Social Security payments. This particular consultant did not have the opportunity to review all of the evidence that would have revealed the claimant might have attempted to mislead him. Turning to the content of the opinion itself, more specific, quantified terms are needed at this step of the decision. Useful terms are defined within the regulations and widely used by qualified sources. The statements made by this source seemed to indicate some degree of limitation, but appeared to be based upon limited information and too vague to provide much guidance. For these reasons, the undersigned assigns this opinion only partial weight.

(R. at 261-262.)

The ALJ did not err by giving this opinion only partial weight. Rather, the ALJ reasonably considered record evidence that tended to contradict Dr. Wagner's opinion regarding the severity of Plaintiff's limitations. Substantial evidence supports this conclusion.

The ALJ addressed at some length the evidence of Plaintiff's intentional misleading that caused him to discount Dr. Wagner's opinion. For example, the ALJ cited Plaintiff's admission to his own care provider that he was feigning psychotic symptoms in order to be eligible for Social Security (R. at 261 citing R. at 538). Further, the ALJ noted that there were also hints the claimant was using drugs and denying substance abuse because of secondary gain considerations in talking with his health care providers. (*Id*. citing R. at 713) ("I ain't putting that . . . in there to lose my social security")). Additionally, the ALJ cited some indication in the record that Plaintiff was not using his prescribed medications but was selling them instead. (*Id*. citing R. at 731.) The ALJ summarized the state of the record on this issue as follows:

> Overall, the evidence indicates the claimant's episodes of psychotic admissions were either feigned (6F) or secondary to his substance abuse (i.e. not as severe as alleged). The claimant was intoxicated when he entered a stranger's home by accident. He was arrested for this. The evidence showed the claimant tested positive for amphetamine at the jail. His symptoms and functional limitations improved with sobriety while he was incarcerated. The claimant was able to serve his time in jail and asked to be with the general population because he wanted to be around people and watch television (i.e. socialize) (l4F).
>
> The evidence shows the claimant has a history of substance-induced psychosis that quickly resolved with sobriety.

(R. at 261 citing R. at 535-539, 713-732.)

Plaintiff does not challenge the ALJ's discussion reflected above. At most, Plaintiff argues, without specificity, that Dr. Wagner's assessments are consistent with Plaintiff's hearing testimony and the other evidence of record as a whole. (ECF No. 22 at 2.) However, as discussed above, the Court is required to defer to the findings at issue here even if Plaintiff had identified substantial evidence supporting an opposite conclusion. *Blakley*, 581 F.3d at 406; *cf. Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 649 (6th Cir. 2013) ("The ALJ retains

a 'zone of choice' in deciding whether to credit conflicting evidence."). For these reasons, the undersigned finds that the ALJ did not err in his consideration of Dr. Wagner's opinion.

In terms of Plaintiff's RFC as formulated by the ALJ, a plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). When considering the medical evidence and calculating the RFC, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted).

An ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC.  The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case

record were considered and resolved. S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted). The ALJ satisfied his obligation here.

Further, the fact that the ALJ did not incorporate any restrictions contemplated by Dr. Wagner is not legal error in and of itself. *See White v. Comm'r of Soc. Sec.*, 970 F. Supp. 2d 733, 753 (N.D. Ohio Sept. 10, 2013) (noting that the ALJ's decision not to incorporate all of the State agency examining physician's restrictions, despite attributing significant weight to his opinion, was "not legal error in and of itself"). "While an ALJ must consider and weigh medical opinions, the RFC determination is expressly reserved to the Commissioner." *Id.* (citing *Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 198 (6th Cir. 2004)). An ALJ simply is not required to include restrictions in the RFC that the ALJ did not accept. *See Hall v. Comm'r of Soc. Sec.*, No. 1:17-CV-363, 2018 WL 3524467, at *4 (S.D. Ohio July 23, 2018), *report and recommendation adopted*, No. 1:17-CV-363, 2018 WL 4031060 (S.D. Ohio Aug. 23, 2018) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

For the reasons previously discussed, substantial evidence supports the ALJ's assessment of the evidence and the Court must defer to it. *Longworth*, 402 F.3d at 595. While Plaintiff may have preferred a different RFC than the one determined by the ALJ, the ALJ thoroughly explained the bases for his determination, which enjoys substantial support in the record. *Schmiedebusch*, 536 F. App'x at 649; *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) ("The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.").

For these reasons, it is **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

## VI.    CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Based on the foregoing, it is therefore **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## VIII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to

specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted).

/s/ <em>Elizabeth A. Preston Deavers</em>

**DATED:  January 27, 2021**          **ELIZABETH A. PRESTON DEAVERS**
                                                    **UNITED STATES MAGISTRATE JUDGE**